351 So.2d 496 (1977)
STATE of Louisiana ex rel. Major Field LOCKHART, Relator,
v.
T. N. ARMISTEAD, Superintendent, East Louisiana State Hospital, Respondent.
No. 59665.
Supreme Court of Louisiana.
October 10, 1977.
Rehearing Denied November 11, 1977.
*497 R. James Kellogg, American Civil Liberties Union of La., Inc., New Orleans, for plaintiff-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Thomas S. Halligan, A. Mills McCawley, Asst. Attys. Gen., Henry N. Brown, Jr., Dist. Atty., James S. Harris, Asst. Dist. Atty., for defendant-respondent.
TATE, Justice.
In 1975, Lockhart was committed to a state mental institution upon a finding that he lacked mental capacity to assist his counsel in the defense of criminal charges. La.C.Cr.P. art. 648 (1975). His petition of habeas corpus was denied by the trial court.
We granted certiorari to consider whether Lockhart's continued confinement by virtue of Article 648 violates due process protections afforded him by our state and federal constitutions. 345 So.2d 898 (La.1977). This proceeding raises the constitutional due process issue:
Once it has been determined that a person by reason of a permanent mental defect lacks capacity to prepare his defense to criminal charges, may the state nevertheless continue confinement or restraint of this person solely on account of such mental incapacity?
Under Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), a negative answer is required, and we order the petitioner released.

(1)
Lockhart was charged by information with simple burglary. A sanity commission appointed to examine him found "he presently lacks the capacity to understand the proceedings against him, or to assist in his defense." In view of this finding, the trial judge committed Lockhart on July 14, 1975, to the East Louisiana State Hospital at Jackson "until such time as those authorities find him capable of understanding the proceedings against him and capable of assisting in his defense."
During the next fourteen months, Lockhart was examined on several occasions by neurologists who determined that he suffered from atherosclerosis with cerebral infarction. In a letter to the trial judge on September 29, 1976, the hospital superintendent reported: "The damage resulting from the multiple cerebral infarcts is considered permanent and irreversible." This affliction rendered Lockhart physically unable to communicate, and the medical staff considered it probable that he would not improve.
Despite this diagnosis, Lockhart was not released.
A petition for habeas corpus was filed in his behalf on March 9, 1977. This petition was dismissed on March 28, 1977.

(2)
Lockhart was committed under the authority of La.C.Cr.P. art. 648 A. In pertinent part, this provides: "If the court determines that the defendant lacks the mental capacity to proceed, the proceedings shall be suspended and the court shall commit the defendant to a proper . . . mental institution . . . for custody, care, and treatment for as long as the lack of capacity continues."
This provision is quite similar to an Indiana statute which was declared unconstitutional in its application, Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). The Indiana statute provided that "if the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the court shall order the defendant committed . . ." This confinement shall end "[w]henever the defendant shall *498 become sane." See Ind.Code 35-5-3-2 (1971).
In Jackson, the petitioner was a deaf mute who, like Lockhart, had very little communicative ability. After being charged with two robberies, he was found incompetent to stand trial and was thus committed to a mental institution. The medical evidence indicated that the possibility of his ever gaining competence was quite bleak. Jackson therefore argued that his commitment was tantamount to a life sentence, and that he was thereby deprived of his liberty without due process of law.
In Jackson, the court held that due process requires there be a reasonable relationship between the purpose behind the commitment and the nature and duration of that commitment. 406 U.S. 736-38, 92 S.Ct. 1857-58.
In holding that Jackson's confinement denied him due process, the court stated, 406 U.S. 738, 92 S.Ct. 1858: "* * * a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal."
Measured by this constitutional standard enunciated by Jackson, Lockhart's continued confinement clearly violates due process. Lockhart was held in a mental institution almost two years, despite the finding after one year that his condition would not improve. It is unnecessary for us to determine what time limits for commitment will comport with due process; it is sufficient to decide today that Lockhart's confinement exceeded the "reasonable period" envisioned by Jackson.
Accordingly, we hold that the state failed to afford Lockhart due process of law, when it continued to hold him under criminal commitment long after it became clear that he would not attain competence to stand trial.

(3)
We should note that the Louisiana statute contains two additional clauses which are not in the Indiana statute, and which arguably create some time limits on the period of confinement:
(1) The final sentence of article 648 A is: "In no instance shall such custody, care, and treatment exceed the time of the maximum sentence the defendant could receive if convicted of the crime with which he is charged." Thus Lockhart's confinement under the order of July 14, 1975, could not have extended past 1984, whereas a commitment under the Indiana law could presumably last indefinitely if the detainee never gained the capacity to proceed.
(2) Article 648 C provides: "At any time after commitment, on recommendation of the superintendent of the institution that the defendant will not be helped by being held in custody and may be released without danger to himself or to others, the court may order the defendant released on probation. The probationer shall be under the supervision of the Department of Corrections, division of probation and parole, and subject to such conditions as may be imposed by the court."[1]
These two provisions do not validate continued confinement or restraint of liberty (probation subject to state supervision) of a person charged with crime, simply because *499 of a finding of his permanent mental incapacity to assist in his defense:
The first provision permits commitment to the mental institution for the maximum sentence for the crime with which the accused is charged (but not convicted). The second provision permits the accused's release upon probation under the supervision, of state officers (for the same extended period) upon conditions to be fixed by the court; the liberty thereby accorded is conditional and subject to state restraint.
Jackson clearly holds that, where state commitment is founded solely "upon incapacity to proceed to trial," it can endure no longer than "the reasonable period of time necessary to determine" the probability of the accused's attaining capacity in the foreseeable future. 406 U.S. 738, 92 S.Ct. 1858. If (as in the present case) it is determined there is no probability of such recovery, "then the state must either institute the customary civil commitment proceeding . . . or release the defendant." Id.
While the two provisions mitigate the length of the confinement and permit the relaxation of it to probation, nevertheless they do not validate the present continued restraint upon Lockhart's liberty: For no other reason than his mental incapacity to undergo trial to determine his innocence or guilt, Lockhart is still subject to state control for the maximum term of the offense with which he is charged but of which he has not been convicted.
Under Jackson, this irrational restraint on liberty offends due process, whether by actual confinement or supervised control. No reasonable relationship exists between Lockhart's incapacity to assist his counsel and the state restraint upon his liberty for a term (9 years) of a crime (simple burglary, La.R.S. 14:62) with which he is merely charged.
By motion to dismiss this proceeding, the state argues that Lockhart's release on parole makes moot his habeas corpus application.[2] We disagree, and we deny the motion for the reasons above indicated.

(4)
In summary, the evidence shows that, solely on account of his incapacity to proceed to trial, the defendant was committed to a state mental institution for two years and, by virtue of this commitment, was recently released on probation (although still subject to revocation and state supervision). The evidence further indicates no substantial probability that he will ever attain the mental capacity to assist in his defense.
Accordingly, without prejudice to any right the state may have to institute civil commitment proceedings, La.R.S. 28:54 (1977), the relator is entitled to be released from any further restraint by reason of the commitment of July 14, 1975.
We hold here only that a commitment to determine mental capacity must be limited to a reasonable period. We do not reach the constitutionality of the statute, nor intimate that a commitment for a lesser period offends due process.
For the reasons assigned, therefore, the order of confinement of July 14, 1975 is terminated, as is any probation resulting from such order.
ORDER OF CONFINEMENT TERMINATED.
NOTES
[1] After we granted certiorari, Lockhart was in fact released on probation by virtue of this provision. The state's contention that such release mooted this proceeding is noted below.
[2] We note that, by Lockhart's release on probation the state concedes that he is not "a danger to himself or to others," La.C.Cr.P. art. 648 C.