I,VICTORY, J.
This case is on appeal to this Court pursuant to La. Const, art. V, see. 5(D) from a finding of the trial court that Louisiana Code of Criminal Procedure art. 648(B)(2) is unconstitutional. After reviewing that record and the applicable law, we affirm the trial court’s judgment and hold that La.C.Cr.P. art. 648(B)(2) violates-the Due Process Clauses of the United States and Louisiana Constitutions.
FACTS AND PROCEDURAL HISTORY
On November 20, 1998, the defendant, Shantell Denson, and two other teenage girls, allegedly stole a purse from one victim while armed with metal crutches and a metal baton, and attempted to rob another victim in the same general vicinity while armed with the crutches and the baton. Defendant was .charged with one count of armed robbery and one count of attempted armed robbery. At her arraignment on January 27, 1999, defendant entered a plea of not guilty and the trial court appointed the Tulane University Criminal Law Clinic as counsel. Defense counsel moved for a sanity commission, as it became clear that defendant might , lack the mental capacity to proceed as a matter of La.C.Cr. P. art. 641.[1] The trial court appointed a two-_Jmember2 sanity commission to examine the defendant pursuant to La.C.Cr. P. arts. 643[2] and 644,[3] and the commission issued *807 a report recommending that the court find lathe defendant incompetent to stand trial on the basis of the defendant’s mild to moderate mental retardation, unspecified psychosis, and mild paranoia. On May 10, 1999, the trial court entered the commission’s report into the record and found the defendant incompetent to stand trial. In July of 1999, the trial court ordered that defendant be “detained by the Office for Citizens with Developmental Disabilities in a group home in Violet, Louisiana,” until the court “determines the date of her release or until she attains the maximum age for residency in said home.”
Defendant failed to appear for a status hearing on April 10, 2001, resulting in her arrest on June 26, 2001.[4] On July 3, 2001, pursuant to La.C.Cr.P. arts. 647 and 648, the trial court appointed two forensic psychiatrists to re-evaluate defendant and determine whether she could be restored to competence. The court found defendant unrestorably incompetent to stand trial and on November 13, 2001, placed defendant on supervised probation for a term of “five years, which may be extended each year after the completion of the fifth year period by a contradictory hearing.” The probation order subjected defendant to the supervision of the Louisiana Department of Public Safety and Corrections, Office of Probation and Parole (the “DOC”), and to monitoring by the Department of Health and Hospitals, Community Forensic Services Division. Among the 11 restrictions and conditions of defendant’s probation was the requirement that she live in the Violet Community Group Home under the supervision of a criminal probation officer.
On March 27, 2003, the court revoked defendant’s probation[5] based upon, among other things, her arrest on a misdemeanor charge and ordered that she be Devaluated at the Feliciana Forensic Facility in Jackson, Louisiana.[6] Defendant then filed a petition for habeas corpus, alleging that allowing a trial court to impose probation upon her, an unrestorably incompetent defendant, violated her right to due process, and thus the statute authorizing such probation was unconstitutional.
On September 30, 2003, the court clarified that “the probation status in this matter is under article 648(B)(2)” and that defendant “was placed on a probationary *808 status, [but] she should have been placed on a probationary status under Article 648 — Code of Criminal Procedure Article 648(B)(2).” The trial judge declined to rule on the petition for habeas corpus until such time as the forensic psychiatrists reevaluated whether defendant was “dangerous.” On January 29, 2004, forensic psychiatrists conducted a psychological assessment of defendant and testified that she was not a danger to herself or others. Relying on this testimony, the trial court found that she was not dangerous to herself or others. After a hearing on February 18, 2004, the trial court granted defendant’s writ of habeas corpus and found La.C.Cr.P. art. 648(B)(2) unconstitutional, and ordered defendant’s immediate release from all state supervision. The instant state appeal followed. See La. Const. Art. 5, § 5(D) (granting this Court appellate jurisdiction when lower court declares law unconstitutional).
DISCUSSION
The Due Process Clause of the Louisiana Constitution provides that “[n]o person shall be deprived of life, liberty or property, except by due process of law.” La. Const. Art. I, § 2. Section 1 of the Fourteenth Amendment to the United States Constitution similarly states: “[n]o State shall make or enforce any law which shall | sabridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law ...” Defendant argues, and the trial court found, that La.C.Cr.P. art. 648(B)(2), is unconstitutional in violation of the due process clauses of the U.S. and Louisiana Constitutions.
La.C.Cr.P. art. 648 governs the procedure to be followed if a court determines by clear and convincing evidence that the defendant lacks the mental capacity to proceed to trial, and provides various types of care, custody, and treatment to which the defendant may be subjected to depending on the type of offense he or she committed and whether the court determines he or she is likely to be restored to competence.[7] La.C.Cr.P. art. 648(B)(1) attempts to pro *809 vide limitations on the length | fiof time that a defendant may be required to submit to such care, custody, and treatment, by providing as follows:
In no instance shall such custody, care, and treatment exceed the time of the maximum sentence the defendant could receive if convicted of the crime with which he is charged. At any time after commitment and on the recommendation of the superintendent of the institution that the defendant will not attain the capacity to proceed with his trial in the foreseeable future, the court shall, within sixty days and after at least ten days notice to the district attorney and defendant’s counsel, conduct a contradictory hearing to determine whether the mentally defective defendant is, and will in the foreseeable future be, incapable of standing trial and whether he is a danger to himself or others.
If it is determined that the defendant will not attain capacity to proceed to trial in the foreseeable future and is not a danger to himself or others, as in this case, La.C.Cr.P. art. 648(B)(2) provides:
If, after the hearing, the court determines the defendant is, and will in the foreseeable future be, incapable of standing trial and may be released without danger to himself or others, the court shall release the defendant on probation. The probationer shall be under the supervision of the Department of Public Safety and Corrections, division of probation and parole, and subject to such conditions as may be imposed by the court.
On the other hand, if it is determined that the defendant will not attain capacity to proceed to trial in the foreseeable future and is a danger to himself or others, La. C.Cr.P. art. 648(B)(3) provides, in pertinent part:
If, after the hearing, the court determines the mentally defective defendant incapable of standing trial, is a danger to himself or others, and is unlikely in the foreseeable future to be capable of standing trial, the court shall order commitment to a designated and medically suitable treatment facility. Such a judgment shall constitute an order of civil commitment....
It is well settled law that “indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment’s guarantee of due process.” Jackson v. Indiana, 406 U.S. 715, 731, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In Jackson, the Court held:
|7[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.
Id., 406 U.S. at 738, 92 S.Ct. at 1858.
This Court first acknowledged the Jackson holding in State ex rel. Lockhart v. Armistead, 351 So.2d 496 (La.1977), establishing in Louisiana an unambiguous, bright-line rule that “[o]nce it has been determined that a person by reason of a permanent mental defect lacks capacity to prepare his defense to criminal charges,” the state may not continue confinement or *810 restraint of the person “solely on account of such mental incapacity.” Lockhart, 351 So.2d at 497. In Lockhart, the Court recognized that:
Jackson clearly holds that, where state commitment is founded solely “upon incapacity to proceed to trial,” it can endure no longer than “the reasonable period of time necessary to determine” the probability of the accused’s attaining capacity in the foreseeable future. 406 U.S. [at] 738, 92 S.Ct. [at] 1858. If (as in the present case) it is determined there is no probability of such recovery, “then the state must either institute the customary civil commitment proceeding ... or release the defendant.” Id.
Lockhart, 351 So.2d at 499.
The Lockhart defendant was committed under the authority of La.C.Cr.P. art. 648(A) which then provided that “[i]f the court determines that the defendant lacks the mental capacity to proceed, the proceedings shall be suspended and the court shall commit the defendant to a proper ... mental institution ... for custody, care, and treatment for as long as the lack of capacity continues.”[8] The Court took note of two other sections of the statute, one which mitigated the length of confinement and the | «other which permitted the relaxation of it to probation,[9] but held that “nevertheless -they do not validate the present continued restraint upon Lock-hart’s liberty: For no other reason than his mental incapacity to undergo trial to determine his innocence or guilt, Lockhart is still subject to state control for the maximum term of the offense with which he is charged but of which he has not been convicted.”
The Court in Lockhart stopped short of holding the statute unconstitutional. Instead, it held that “a commitment to determine mental capacity must be limited to a reasonable period” and released the defendant from any further state custody either by actual confinement or supervised control.
While the legislature subsequently amended La.C.Cr.P. art. 648 several times,[10] the current version of La.C.Cr.P. art. 648(B)(2) requires that a trial court place non-dangerous defendants not capable of standing trial in the foreseeable future on probation supervised by the Department of Public Safety and Corrections (“DOC”).[11] As such, La.C.Cr.P. art. 648(B)(2) requires that a court order the defendant held under state supervision even after experts have determined that there is not a substantial probability that he or she will attain the capacity to stand *811 trial in the foreseeable future, a practice acknowledged to violate a defendant’s right to due ^process under Jackson and Lockhart, which require in such a case that the state either institute civil commitment proceedings or release the defendant.
We reject the state’s argument the trial court’s probation order of November 13, 2001 was a civil commitment under La. C.Cr.P. art. 648(B)(3). As an initial matter, Orleans Parish Criminal Court lacks jurisdiction over civil matters such as commitment. La. R.S. 13:1336. In any event, civil commitment law requires that “[a]ny person of legal age” commence proceedings by filing a petition alleging that the person to be committed “is suffering from mental illness which contributes or causes that person to be a danger to himself or others or to be gravely disable[d].” La. R.S. 28:54. In the instant case, by “sentencing” the defendant to probation under the provisions of La.C.Cr.P. art. 648(B)(2), the trial court necessarily found that the defendant posed no danger to herself or to others. Further, the trial court has not yet addressed the issue of whether the defendant meets the definition of “gravely disabled” as provided by La. R.S. 28:2(10),[12] or found that the defendant meets such a definition. Finally, the pronouncements in both Jackson and Lock-hart that the state may institute civil commitment proceedings anew strongly cuts against the state’s novel suggestion that this Court could determine in hindsight that the defendant may have been afforded the requisite due process.
CONCLUSION
Under the due process clause, a criminal defendant who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that |inhe will attain that capacity in the foreseeable future. Once it is determined that there is no substantial probability that he will attain the capacity to proceed to trial in the foreseeable future, the state must either institute civil commitment proceedings or release the defendant. La. C.Cr.P. art. 648(B)(2), which requires that a non-dangerous criminal defendant who is found to be incapable of standing trial in the foreseeable future be placed on probation under state supervision, violates the Due Process Clauses of the United States and Louisiana Constitutions because it requires that defendant, who has not been convicted of any crime, to be held in state custody after it has been determined that he or she is incapable of standing trial in the foreseeable future, solely on account of his or her incapacity to stand trial.
DECREE
For the foregoing reasons, the judgment of the trial court, declaring article 648(B)(2) of the Louisiana Code of Criminal Procedure unconstitutional, is affirmed.
AFFIRMED.
TRAYLOR and JOHNSON, JJ., concur.

. La.C.Cr.P. art. 641 provides: "Mental inca-, pacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.”

. La.C.Cr.P. art. 643 provides:
The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant’s mental capacity to proceed. Prior to the ordering of any such mental examination, the court shall appoint counsel to represent the defendant if he has not already retained counsel.

. La.C.Cr.P. art. 644 provides:
A.Within seven days after a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall cónsist of at least two and not more than three members who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who .are qualified by training or experience in forensic evaluations. The court may appoint, in lieu of one physician, a clinical psychologist who is licensed to practice psychology in Louisiana, who has been engaged in the practice of clinical or counseling psychology for not less than three consecutive years immediately preceding the appointment, and who is qualified by training or experience in forensic evaluations. Eveiy sanity commission shall have at least one psychiatrist as a member of the commission, unless one is not reasonably available, in which case, the commission shall have at least one clinical psychologist as a member of the commission. No more than one member of the sanity commission shall be the coroner or any of his deputies. •
B. The members of the sanity commission appointed to, make the examination shall have free access to the defendant at all reasonable times. The court shall subpoena witnesses to attend the examination 'at the request of the defendant, the commission, or any member thereof.
C. For the purpose of the mental examination, the court may order a defendant previously released on bail to appear for mental examinations and hearings in the same manner as other criminal proceedings.
D. (1) The court, in any judicial district which enters into a cooperative endeavor agreement with the local mental health unit, in lieu of appointing a sanity commission as provided in Paragraph A, may appoint the local mental health unit to examine and report on the mental condition of the defendant. If the local mental health unit is ordered to *807 conduct the examination, it shall form a clinical team, consisting of at least two but not more than three members, to conduct the examination. The clinical team shall be composed of one or more licensed physicians with at least three years experience in the study of psychiatry in an approved United States General Psychiatry Residency Program; if only one such licensed physician is a member of the clinical team, the remaining members of the clinical team may be composed of clinical psychologists, or licensed clinical social workers, who are qualified by training or experience in forensic evaluations.
(2)(a) With respect to all other provisions of the Code of Criminal Procedure in which the term “sanity commission” is designated, it shall also mean and include, for the exclusive purpose of this Article, a clinical team designated by the local health unit to conduct the examination of the defendant in accordance with this Paragraph.
(b) “Local mental health unit” as used in this Paragraph shall mean a legislatively created Human Services Authority.

. She was incarcerated at the Conchetta Women and Juvenile Facility until November 13, 2001 because there was no bed available at any group home.

. Beginning in October of 2002, various incidents caused defendant to be charged with violating the terms of her probation and being placed in jail. She was also briefly placed in jail on an unrelated outstanding misdemeanor citation in another parish.

. Because there were no beds available for women at Feliciana, she remained incarcerated at the Conchetta Women and Juvenile Facility. On September 15, 2003, the trial court released defendant to a representative of the Constance Community Group Home.

. La.C.Cr.P. art. 648 A provides:
A. The criminal prosecution shall be resumed unless the court determines by clear and convincing evidence that the defendant does not have the mental capacity to proceed. If the court determines that the defendant lacks mental capacity to proceed, the proceedings shall be suspended and one of the following dispositions made:
(1) If the court determines that the defendant’s mental capacity is likely to be restored within ninety days by outpatient care and treatment at an institution as defined by R.S. 28:2(28) while remaining in the custody of the criminal authorities, and if the person is not charged with a felony or a misdemeanor classified as an offense against the person and is considered by the court to be unlikely to commit crimes of violence, tiren the court may order outpatient care and treatment at any institution as defined by R.S. 28:2(28).
(2)(a) If the person is charged with a felony or a misdemeanor classified as an offense against the person and considered by the court to be likely to commit crimes of violence, and if the court determines that his mental capacity is likely to be restored within ninety days as a result of treatment, the court may order immediate jail-based treatment by the Department of Health and Hospitals not to exceed ninety days; otherwise, if his capacity cannot be restored within ninety days and inpatient treatment is recommended, the court shall commit the defendant to the Feli-ciana Forensic Facility.
(b) If a defendant committed to the Felicia-na Forensic Facility is held in a parish jail for one hundred eighty days after the court’s determination that he lacks the mental capacity to proceed, the court shall order a status conference to be held with the defense and the district attorney present, and for good cause shown and on motion of the defendant or the district attorney or on the court's own motion, the court shall order a contradictory hearing to determine whether there has been a change in the defendant's condition or other *809 circumstances sufficient to warrant a modification of the previous order.

. This was similar to the Illinois state statute under which the defendant’s confinement was held to be unconstitutional in Jaclcson.

. The statute at issue in this case, La.C.Cr.P. art. 648(B)(2) is similar to the section oi the statute referred in Lockhart, then La.C.Cr.P. art. 648(C), which provided for probation.

. The legislature made the most relevant substantive changes to La.C.Cr.P. art. 648(B) in 1988, distinguishing non-dangerous defendants from their more dangerous counterparts and requiring probation only for those determined to be non-dangerous. La. Acts 383 Sec. 1. La.C.Cr.P. art. 648(B)(3) deems that a judgment of incompetence to stand trial in the case of a dangerous defendant shall also serve as a judgment of civil commitment. In cases of non-dangerous offenders, however, the legislature does not authorize such a finding, La.C.Cr.Pr. art. 648(B)(2), because non-dangerous incompetents do not always meet the criteria for civil commitment. See La. R.S. 28:2(10); La. R.S. 28:54.

.Both the legislature as well as this Court have determined that a defendant on probation is, in fact, in state custody. La.C.Cr. P. art. 924(2); see State v. Smith, 96-1798 (La. 10/21/97), 700 So.2d 493, 495-96 (analyzing State ex rel. Becnel v. Blackburn, 410 So.2d 1015 (La.1982)).

. La. R.S. 28:2 defines “gravely disabled” in pertinent part as:
[T]he condition of a person who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness or substance abuse and is unable to survive safely in freedom or protect himself from serious harm[.]