WILLIAMS, J.
hThe defendant, Mark Damon Ford, was charged by bill of information with simple criminal damage to property, a violation of LSA-R.S. 14:56. On the defense’s motion, a mental examination of the defendant was conducted, and a sanity commission was appointed pursuant to LSA-C.Cr.P. art. 644. Following a hearing, the trial court determined that the defendant lacked the mental capacity to proceed to trial in the foreseeable future and that he was a danger to himself or others. Consequently, the trial court ordered that the defendant be committed to East Louisiana Mental Health Systems/Forensic Division for appropriate placement in a facility designed for the mentally disabled. For the following reasons, we affirm.
FACTS
On June 9, 2005, a deputy from the Caddo Parish Sheriffs Office was dispatched to the home of Carl Lewis. Lewis reported to the deputy that he was in his home asleep when he heard a noise coming from his backyard. According to Lewis, he looked out of his window and observed the defendant, his neighbor, cutting his swimming pool pump. He stated that the defendant ran away when he turned on the outside lights. Lewis then went outside and noticed that the lines to his central air conditioning unit had been cut. The deputy went to the defendant’s residence, but was unable to locate him. The defendant was arrested three days later and was thereafter charged by bill of information with simple criminal damage to property, a violation of LSA-R.S. 14:56.
Subsequently, defense counsel filed a motion for the appointment of a sanity commission, alleging, “There is good reason to believe that the | ^defendant does not presently have the mental capacity to understand the proceedings and did not, at the time of the offense, have the ability to discern right from wrong.” The trial court granted the motion and ordered that “a sanity commission consisting of Drs. Dean Robinson and George Seiden” examine the defendant with regard to his current mental capacity, as well as his mental capacity at the time of the alleged offense.
On August 10, 2005, Dr. Seiden examined the defendant and diagnosed him with dementia aqd personality changes secondary to head trauma.[1] Dr. Seiden concluded as follows:
*141 Based on my evaluation, I have concluded that Mr. Mark Damon Ford currently does not have the ability to consult with his attorney with a reasonable degree of rational understanding of the proceedings against him. Specifically, he does not appear to understand the nature of the charges against him, nor appreciate their seriousness. He does not understand what defenses are available to him. He can distinguish a guilty plea from a not guilty plea and understands the consequences of each. He does have an awareness of his legal rights. He can understand the range of possible verdicts and the consequences of conviction. His ability to recall and relate facts pertaining to his actions and whereabouts at certain times is impaired by his dementia. His ability to assist counsel in locating and examining relevant witnesses is impaired. He does not have the ability to maintain a consistent defense. He does not have the ability to listen to the testimony of witnesses and inform his lawyer of distortions or misstatements. He does not have the ability to make simple decisions in response to well-explained alternatives. If necessary to his defense strategy, he is not capable of testifying in his own defense. His mental condition is not likely to deteriorate significantly under the stress of trial, as long as he is maintained on appropriate medication.
|,J)r. Seiden was unable to determine whether the defendant was capable of distinguishing right from wrong at the time of the alleged offense. Dr. Seiden concluded that the defendant was not competent to proceed to trial and that it was unlikely that his dementia and cognitive deficits would improve in the foreseeable future. Dr. Seiden further recommended that the defendant be “maintained in a secure forensic psychiatric facility,” noting that the defendant’s “history demonstrates a repeated tendency to engage in behavior that impinges on the rights of others and could eventually place his own life in danger.”
Dr. Robinson examined the defendant on September 21, 2005 and opined that the defendant had “the ability to assist his attorney in preparation of the defense.” He noted that the defendant knew his attorney’s name and was aware of the general nature of the charges against him. Dr. Robinson further stated that the defendant was aware of the possible pleas, and he possessed the ability to assist in his defense by providing his attorney with information with regard to his whereabouts at the time of the alleged offense and information about possible witnesses. Nevertheless, Dr. Robinson noted:
Although [Ford] consistently denies committing the alleged offense, his lack of ability to give much detail may impair his capacity to give a consistent account. This judgmental defect may also make it harder for him to properly appraise the impact of other witnesses or evidence and advise his attorney of any distortions or misrepresentations.
On November 3, 2005, Dr. Seiden wrote a letter to the trial court in which he stated:
|4My concerns about [the defendant’s] competence to stand trial centered on his ability to attend to the proceedings during the course of a trial, communicate effectively with his attorney during a trial, and to testify in his own defense, especially during cross-examination. It is my opinion, with reasonable medical certainty, that he can understand the consequences of a plea agreement and knowingly consent to one, with the advice of his attorney. He can distinguish between a plea of guilty and not guilty, and is capable of understanding the con *142 sequences of consenting to a plea agreement.
During the sanity hearing, Dr. Seiden testified that the defendant’s dementia and the deficits in his memory and judgment are irreversible, and the defendant’s competence is not restorable. With regard to the defendant’s dangerousness to himself and others, Dr. Seiden stated:
[The defendant] had engaged in repetitive behaviors that at least scared other people. There were aggressive acts and apparently he ... would periodically engage in behaviors that threatened other people which ... could cause harm to them if they responded defensively in any way and could cause harm to him if somebody thought he was going to hurt them because of his behaviors and trying to protect themselves....
* * *
At the conclusion of the hearing, the trial court stated:
With respect to Dr. Robinson, who finds the defendant competent to proceed, he also finds there are some defects with respect to the defendant that are similar to those found by Dr. Seiden.
[[Image here]]
I am in agreement with Dr. Seiden based upon his report as well as his extensive testimony presented here in court today that the defendant is not competent to proceed to trial. It is further the opinion of the Court that the defendant is a danger possibly to himself as well as others.
[[Image here]]
[RI do not believe that in the near foreseeable future that he is restorable based upon the testimony of doctors presented in this case.
The trial court ordered that the defendant be committed to East Louisiana Mental Health Systems/Forensic Division for appropriate placement in a facility designed for the mentally disabled, pursuant to LSA-C.Cr.P. art. 648(B)(3), infra, and Lockhart v. Armistead, 351 So.2d 496 (La.1977). The trial court further ordered that the defendant be reevaluated every 180 days for the first two years, accompanied by a treating physician’s report regarding the status of mental illness, dangerousness, assessment and treatment recommendations. The defendant now appeals.
DISCUSSION
The defendant contends the evidence presented at the sanity hearing was insufficient to show that he lacked capacity to proceed to trial in the foreseeable future and was a danger to himself and others.
It has long been established that a person whose mental condition is such that he lacks the capacity to understand the nature of the proceedings against him, and is unable to assist counsel, may not be subject to trial. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. LSA-C.Cr.P. art. 641. The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant’s mental capacity to proceed. LSA-C.Cr.P. art. 643.
| ^Louisiana's statutory scheme for detecting mental incapacity “jealously guards a defendant’s right to a fair trial.” State v. Nomey, 92-1631 (La.1/19/93), 613 So.2d 157, 161 (quoting State v. Rogers, 419 So.2d 840, 843 (La.1982)). In evaluating the legal capacity of the criminally *143 accused, the considerations in determining whether a defendant is fully aware of the nature of the proceedings include:
[Wjhether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction.
State v. Bennett, 345 So.2d 1129, 1138 (La.1977).
The facts to consider in determining a defendant’s ability to assist in his defense include:
[Wjhether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

Id.

If the court determines that the defendant lacks the mental capacity to proceed, is incapable of standing trial, is a danger to himself or others and is unlikely in the foreseeable future to be capable of standing trial, the court shall order commitment to a designated and medically suitable treatment 17facility. Such a judgement will constitute an order of civil commitment. LSA-C.Cr.P. art. 648(B)(3).
Incapacity to proceed to trial must be proven by a preponderance of the evidence. State v. Bridgewater, 2000-1529 (La.1/15/02), 823 So.2d 877; State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365.[2] A reviewing court owes the trial court’s determinations as to the defendant’s competency great weight, and the trial court’s ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. Bridgewater, supra; State v. Martin, 2000-0489 (La.9/22/00), 769 So.2d 1168.
In this case, defense counsel moved to have the trial court appoint a sanity commission. As noted above, defense counsel expressed concerns about the defendant’s mental capacity, stating, “There is good reason to believe that [Ford] does not presently have the mental capacity to understand the proceedings....” On the trial court’s order, the defendant was examined by two psychiatrists, both of whom noted mental disease or defects. Although Dr. Robinson opined that the defendant was aware of the “general nature of the charges” against him and was capable of assisting in his defense to some degree, *144 Dr. Robinson observed that the defendant’s “judgmental defect” makes it difficult for him to assist in his defense.
Dr. Seiden opined that the defendánt lacked the ability to assist in his |sdefense with any “reasonable degree of rational understanding of the proceedings against him.” Dr. Seiden specifically noted that the defendant did not appear to understand the nature of the charges against him and observed that the defendant’s ability to recall and relate facts pertaining to his actions and whereabouts at certain times was impaired by his dementia, which is “not likely to improve in the foreseeable future.” Regarding the defendant’s dangerousness, Dr. Seiden noted that the defendant had engaged in acts which were aggressive and threatening to others and could be harmed as a result of his conduct.
Based on the evidence presented, we find that the trial court did not abuse its discretion in concluding that the defendant lacked the mental capacity to proceed to trial in the foreseeable future and he was a danger to himself and others.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed.
AFFIRMED.

. According to Dr. Seiden, the defendant had been hit in the head with a baseball bat at the age of eight. Additionally, the defendant was involved in a motorcycle accident when he was twelve years old and was in a coma for an extended period of time. The defendant also sustained a head injury in an automobile accident in 2003.

. LSA-C.Cr.P. art. 648(A) provides that the incapacity to stand trial must be proven by clear and convincing evidence. However, in Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the United States Supreme Court struck down an Oklahoma statute which required proof of incompetence to be proven by clear and convincing evidence. The Court held that the statute violated due process by allowing the trial of a defendant who was more likely than not incompetent. Citing Cooper, the Louisiana Supreme Court has held that incapacity to proceed to trial must be proven by a preponderance of the evidence. State v. Bridgewater, 2000-1529 (La.1/15/02), 823 So.2d 877; State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365.